

**SO ORDERED.**

**SIGNED this 29 day of September, 2021.**

_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

ERIC FITZGERALD JONES, SR.,

    Debtor

Case No. 20-03607-5-SWH
Chapter 13

### ORDER REGARDING OBJECTIONS TO CONFIRMATION AND CONDITIONALLY APPROVING PLAN

The matters before the court are the objections to confirmation of the debtor's Second Amended Chapter 13 Plan (" the plan") (Dkt. 42), which were filed by creditor The Bank of New York Mellon ("BONY") on April 8, 2021, and by the chapter 13 trustee ("the trustee") on April 13, 2021.  (Dkt. Nos. 44, 45).  The debtor filed a memorandum in response and in support of confirmation (Dkt. 46) on April 20, 2021.  A hearing on the objections was held in Raleigh, North Carolina on April 21, 2021, after which the court took the matter under advisement.

With the permission of the court, the debtor and BONY filed supplemental post-hearing memoranda (Dkt. 48, 49), and an amicus brief was filed by Joseph A. Bledsoe III, the standing chapter 13 trustee for the Wilmington Division for the Bankruptcy Court for the Eastern District of

North Carolina (the "standing trustee"). Having fully considered these arguments, the court is prepared to rule.

## DISCUSSION

The debtor filed a petition under chapter 13 of the Bankruptcy Code on November 9, 2020. On November 23, 2020, he filed his schedules, which list two pieces of real property securing debts to creditor BONY: a residence located at 90 Long Drive in Sanford, North Carolina (the "Sanford property"), which is the principal residence of the debtor, and real property located at 123 North Plymouth Street in Fayetteville, North Carolina (the "Fayetteville property"). (Dkt. 13) The Sanford property is listed as having a value of $275,000.00 and being subject to BONY's[1] claim of $302,033.00, with an unsecured portion of $29,497.00. Dkt. 13 at 16. The Fayetteville property is listed as having a value of $54,000.00 and being subject to BONY's claim of $58,864.00, with an unsecured portion of $5,916.89. *Id.* at 17.

On November 25, 2020, BONY filed a proof of claim docketed as Claim No. 9, indicating a secured claim in the amount of $304,567.99 as of the petition date with respect to the Sanford property. On January 19, 2021, BONY filed Claim No. 20 as to the Fayetteville property, asserting a secured claim in the amount of $59,070.38. There are no objections to either proof of claim, and both are deemed allowed.

The debtor's initial chapter 13 plan was filed on November 23, 2020. (Dkt. 14). The debtor filed an amended plan on January 21, 2021, which provided for the debtor's direct payment of both mortgage debts as to ongoing payments and arrears. (Dkt. 29) Citing only Claim No. 9, which is

---

[1] The schedules refer to Select Portfolio Servicing, Inc., but these claims are now held by BONY, which is successor in interest to Select Portfolio Servicing. For ease of reference, the court will refer only to BONY.

the claim secured by the Sanford property, BONY objected to the amended plan on grounds that the amended plan was "not clear as to the timing and specific monthly payments as to the direct repayment of the arrears owed." Dkt. 34 at 2. On March 30, 2021, the debtor filed a second amended plan ("the plan") that omitted any treatment of either of BONY's allowed secured claims. The plan provided further, in the nonstandard plan provisions set out in section 8.1, that "[i]f a claim is not provided for in the plan then the lien rights of the creditor are fully preserved. The chapter 13 trustee shall not disburse on a secured claim that is not provided for in this plan."[2] Second

---

[2] More specifically, and in their entirety, the five nonstandard plan provisions are as follows:

> If the Debtor chooses to sell real property at 90 Long Drive in Sanford, NC or 123 North Plymouth Street in Fayetteville, NC, it shall not be necessary for a pleading to be filed with the court because the properties shall cease to be property of the estate upon confirmation and therefore 11 U.S.C. 363 and Bankruptcy Rule 6004 are not applicable.
>
> EDNC LBR 4002-1(g)(4) shall not apply to the sale of property located at 90 Long Drive in Sanford, NC or 123 North Plymouth Street in Fayetteville, NC.
>
> Plan section 7.2 shall not require that the Debtor file any pleading with the bankruptcy court prior to a sale of 90 Long Drive in Sanford, NC or 123 North Plymouth Street in Fayetteville, NC.
>
> Paragraph 10 of the Order and Notice to Debtor issued by the court on November 12, 2020 shall cease to apply upon confirmation of the plan.
>
> If a claim is not provided for in the plan then the lien rights of the creditor are fully preserved. The chapter 13 trustee shall not disburse on a secured claim that is not provided for in this plan.

*Id.*

The trustee has not objected to the language contained in the nonstandard provisions, but has requested some additional notice requirements, discussed *infra*. The court would prefer modification of these provisions, in large part to exclude the legal conclusions contained therein, but will not require such modification in light of the trustee's non-objection in this case. As is set out later in this order, the additional notice of sales of property will be required.

Amended Plan ("the plan") (Dkt. 42) at 4. The plan does not provide for any distribution to unsecured creditors.[3]

Again citing only Claim No. 9 and the Sanford property, BONY objected to the debtor's plan, primarily[4] on grounds that it "fails to meet the requirements for confirmation under 11 U.S.C. § 1325(a), as the plan does not provide for treatment of Creditor's claim." It is undisputed that the debtor's omission of the claim is intentional, which BONY contends is indicative of a lack of good faith in proposing the plan for confirmation.

The trustee objected on feasibility grounds, asserting that the plan as proposed was infeasible because it was not adequately funded to satisfy all claims scheduled to be paid through disbursements.[5] The trustee had no objection to the nonstandard language in the plan, except to the extent that the language provided that the debtor was not required to provide notice of the sale of

---

[3] The source of the debtor's income is listed as VA disability payments and food stamps. Dkt. 13 at 32 (Schedule I). The debtor's statement of financial affairs indicated that the food stamps were not expected to continue beyond December of 2020. The debtor is a below-median income debtor with little or no current monthly income or resulting disposable income. *Id*. at 36-47 (Official Forms 107 and 122C-1).

[4] In addition, BONY asserts that because the plan specifies that property of the bankruptcy estate vests with the debtor upon plan confirmation, the estate is not entitled to protection of the automatic stay during pendency of the bankruptcy case. Further, BONY contends that the stay does not apply and that it is entitled to pursue its remedies as a lien holder on grounds that the debtor was in default as to the Sanford property at the time the petition was filed in the amount of approximately $5,000, and because of the debtor's "intentional omission" of BONY from its plan. Dkt. 44 at 2. As the court indicated in the hearing, whether BONY has grounds to seek relief from the automatic stay is not a proper basis for an objection to confirmation of the debtor's plan.

[5] The trustee's feasibility objection was based on the debtor's plan not being funded to satisfy all claims to be paid through trustee disbursements. The third amended plan provides for payment of the IRS's priority claim, which (other than the debtor's attorney fees) is the only claim paid through the plan, which appears to address and resolve this objection. The IRS's amended Claim No. 6 sets out a claim of $12,500.78, with a priority claim of $1,903.42.

4

the property. Instead, the trustee requested that he be provided with notice of sale in the event the property is sold, and that the debtor forward a final settlement statement upon the closing. (Dkt. 45)

The standing trustee shares that concern with respect to receipt of notice, and his *amicus* brief focused on the same issue as BONY, which is whether a chapter 13 debtor may omit any treatment of this claim from his plan. The standing trustee contends that the plan fails to meet the good faith requirement of 11 U.S.C. § 1325(a)(3), which he contends is made applicable by 11 U.S.C. § 1307(c)(10), and further that § 1325(a)(5) is both applicable and ambiguous. According to the standing trustee, whether Congress intended in that section to require chapter 13 debtors to provide for fully secured claims in their plan is subject to interpretation, and in the factual context presently before the court, that question should be answered in the affirmative. (Dkt. 48)

The debtor maintains that the plan was proposed in good faith, and that the debtor's decision to not "provide for" BONY's allowed secured claim is not a violation of either 11 U.S.C. § 1322(b)(2) or § 1325(a)(5). Because that claim is secured by real property that is the debtor's principal residence, the debtor reasons, BONY's claim is unaffected and, as a creditor it is entitled to no more than that. Responding to the standing trustee's *amicus* arguments, the debtor argues that they are essentially inapplicable because § 1307(c)(10) pertains to dismissal or conversion, not confirmation, and a motion to dismiss or convert in this case could be brought only by the bankruptcy administrator, not a chapter 13 trustee. Regarding the question of whether the debtor's plan is inconsistent with the good faith requirement of 11 U.S.C. § 1325(a)(3), and thus does not comport with the purposes, provisions, or spirit of chapter 13, the debtor responds as follows:

> A chapter 13 plan is not a disclosure statement. A plan and a disclosure statement are distinct pleadings with distinct purposes as seen in chapter 11. There is no disclosure requirement set forth in 11 U.S.C. § 1322(a) where the various 'shall' provisions are contained. The Debtor's plan complies with the provisions, purposes

5

and spirit of wage-earner bankruptcy as it has been historically practiced from 1938 to present and as it is written. The "spirit" of chapter 13 is that plans are filed and confirmed to address debts of a debtor's choosing in permissible ways. The "spirit" of chapter 13 does not require that all debts owed be addressed in a plan.

Debtor's Supp. Mem. (Dkt. 49) at 2.

Having fully considered all of the parties' arguments, and for the reasons set forth more fully below, the court agrees with the debtor that on the facts of this case, he need not provide for BONY's allowed secured claims[6] in his chapter 13 plan. The court finds no basis on which to question whether the plan was filed in good faith. The trustee's concerns about receipt of notice of pending sale and of settlement statements are well-founded, and the court will require the debtor's provision of both.

I.      **Debtor Not Required to "Provide for" Creditor BONY's Claim in Plan**

As the debtor correctly points out, there is nothing in § 1325(a)(5) of the Bankruptcy Code that would require treatment of a fully secured creditor in a chapter 13 plan. "It should be noted that a debtor need not provide for the allowed secured claim at all in a plan as there is nothing in § 1325(a)(5) of the Bankruptcy Code that requires that a fully secured creditor be dealt with in the plan, and § 1322(b)(2) provides that a plan may leave a creditor's claim unaffected." Hon. Joan N.

---

[6] While BONY holds allowed secured claims with respect to two parcels of real property, neither of which receive treatment in the debtor's plan, both its initial and its second objection to confirmation pertain specifically to the Sanford property and do not mention the Fayetteville property. (Dkt. Nos. 34, 44)  The claims register indicates that BONY's claims were filed at different times by different attorneys, which may explain the limited nature of BONY's objection.
    In addition to there being an objection based only on the claim secured by the Sanford property, the debtor's plan draws no distinction between these two allowed secured claims. Accordingly, because the issue is not before it, the court need not explore whether it is significant that the Sanford property is the debtor's primary residence, meaning the debtor's plan cannot modify BONY's rights with respect to that secured claim under 11 U.S.C. § 1322(b)(2), and the Fayetteville property is not subject to that same limitation.

Feeney *et al*, Treatment of Secured Claims, 2 Bankr. L. Man. § 13.39 (5th ed. updated June 2021). Here, BONY's allowed claim is fully secured by real property that is the debtor's principal residence. Under § 1322(b)(2), which addresses the contents of plans, the debtor's plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). The debtor does not (and cannot) seek modification of BONY's claim, and acknowledges in the nonstandard provision of the plan that if a claim is not provided for in the plan, "then the lien rights of the creditor are fully preserved." Dkt. 42 at 4.

The "divergent treatment of liens" in a chapter 13 as opposed to a chapter 11 case was discussed by the Court of Appeals for the Fourth Circuit in *Regional Building Systems*, wherein the court addressed the "different purposes" served by these chapters, and explained:

> First, as the bankruptcy court noted, "chapter 13 is generally a consumer bankruptcy chapter" because "relatively few chapter 13 debtors" operate a business. . . . Indeed, the bankruptcy code contains debt limitations on chapter 13 filings which necessarily limit the complexity of a Chapter 13 reorganization. *See* 11 U.S.C. § 109(e). Second, *a Chapter 13 debtor can choose not to deal with certain secured claims*. *See id.* §[§] 1325(a)(5), 1322(a). This is why under § 1327(c), unaddressed secured claims pass through a Chapter 13 reorganization unaffected even if the property subject to the claim is addressed by the plan. *See Cen-Pen*, 58 F.3d at 94. Third, Chapter 13 creditors do not vote on the debtor's plan. *See In re Fillion*, 181 F.3d 859, 862 (7th Cir. 1999) ("Creditors do not vote on a Chapter 13 plan.").

*In re Reg'l Bldg. Sys., Inc.*, 254 F.3d 528, 532 (4th Cir. 2001) (emphasis added) (internal citation omitted).

Pursuant to this binding precedent, the court has no difficulty in concluding that where, as here, a creditor holds an allowed secured claim that is secured by real property that is the chapter 13 debtor's principal residence, the debtor is not required to "provide for" that claim in the plan. Moreover, as to the standing trustee's arguments that § 1325(a)(5) is ambiguous, it seems plain that

the Fourth Circuit found none, and would have remarked upon and addressed such ambiguity, if it had. This court sees no basis on which to find ambiguity where the Fourth Circuit found none.

Instead, the court is persuaded by the straightforward treatment recently given to this issue in *Limon*, in which that court, in the context of a creditor's objection that its allowed secured claim was not provided for in the debtor's chapter 13 plan, held as follows:

> This oft-filed objection is baseless. Section 1322(a) of the Bankruptcy Code describes three mandatory chapter 13 plan provisions, none of which expressly address secured claims. *See* 11 U.S.C. § 1322(a). Section 1322(b) provides that a plan *may* "modify the rights of holders of" certain secured claims or "provide for he curing of any default ... and maintenance of payments ... on any ... secured claim." *See* § 1322(b)(2) & (5). And § 1325, which lists the requirements for confirmation of a chapter 13 plan, states that "with respect to each allowed secured claim provided for by the plan," the plan must comply with § 1325(a)(5). But no provision of the Bankruptcy Code requires that a chapter 13 plan provide for all allowed secured claims.

*In re Limon*, 616 B.R. 380, 381 (Bankr. E.D. Wis. 2020) (emphasis in original) (internal citation omitted). In that case, the claim was secured by a vehicle, not a principal residence as addressed in § 1322(b)(2), which suggests that the *Limon* court would make even shorter work of the discussion in the present case. Arguably, the debtor in the *Limon* case could have modified the secured creditor's rights with cramdown plan treatment whereas here, bifurcation of Claim No. 9 or other modification through the plan was not an option for the debtor.

The court is aware that a different tack seemingly was taken in *In re Fuller*, Case No. 19-02641-5-DMW, 2020 WL 3862988 (Bankr. E.D.N.C. July 8, 2020). In that case, the issue of whether treatment of the allowed secured claims held by mortgagor U.S. Bank and creditor CarMax "must" be provided for in the chapter 13 debtor's was raised, but the court specifically concluded that it "need not address the issue." *Id.*, at *3. Instead, the court reasoned that "[e]ven if treatment of a secured claim is permissibly excluded from a Chapter 13 plan, that exclusion has consequences

8

which the Debtor appears to be attempting to avoid." *Id.* That case involved "significant" pre-petition arrears that the debtor failed to account for in her monthly budget and questions as to calculation of the debtor's disposable income, which, together with the plan's lack of a treatment for the U.S. Bank and CarMax claims, precluded the court from ascertaining the feasibility of the plan. *Id.*

The *Fuller* opinion does not discuss the question presently before this court, which rests squarely on § 1325(a)(5). Furthermore, the *Fuller* court had concerns regarding the ability of the chapter 13 trustee to determine whether changes in the secured creditor payments might affect the debtor's disposable income available for payments to unsecured creditors. As the court indicated above, changes in the debtor's secured creditor payments would not affect his disposable income in light of the sources of that income, which are limited to VA disability payments and food stamps.

As noted earlier, to the extent BONY seeks relief from application of the automatic stay, BONY remains free to bring that issue before the court as it deems necessary and that potentiality is not properly considered an objection to confirmation. Instead, it flows from rights that BONY, as a fully secured creditor under § 1322(b)(2), remains free to enforce. BONY's legitimate questions and concerns about "how, when, and from what funds" the debtor proposes to cure the pre-petition deficiency, and to make ongoing regular payments outside the plan, are likewise within its power to address under the terms of its agreement with the debtor. Dkt. 50 at 6. For all the foregoing reasons, BONY's objection to confirmation will be denied.

## II.    Necessity of Appropriate Notice to Trustee

While the court agrees with the debtor that the Bankruptcy Code does not require the treatment of secured creditors in this instance, the court likewise agrees with the trustee that a

debtor's decision to do so results, in many instances, in the inability of courts and creditors to determine whether the debtor can in fact make the payments under the plan or have the ability to make greater distributions under the plan. That determination of feasibility is a foundational duty of the court, and central to the trustee's role. Similarly, where the trustee has no information beyond the amounts owing and possibly in arrears as to a secured claim not provided for in the plan, the trustee cannot know when the debtor's financial situation has changed to an extent that warrants a plan modification. A mortgage modification may dramatically reduce a debtor's monthly payment, for example, which could free up disposable income for the benefit of unsecured creditors.

In light of these practical and significant concerns, it seems plain to the court that some actions must be taken outside the plan if the debtor chooses not to treat a secured claim. Even where a debtor has made appropriate disclosures and essentially given fair warning to creditors and the trustee of his intentions, there are repercussions to that choice. The goal of a fresh start is primary in every chapter 13 case, and the ability to determine the precise balance owing on a residential mortgage is essential to a fresh start. If a debtor chooses not to treat a claim secured by a real property residence, a chapter 13 trustee will be hard-pressed to file a motion to declare a mortgage current at the conclusion of a chapter 13 plan pursuant to Bankruptcy Rule 3002.1. Further, the trustee will have insufficient knowledge regarding whether he should seek a modification of a confirmed plan due to changes in the mortgage payments.

In this case, the facts before the court make it plain that based on the debtor's limited sources of income, the chance of there being any dividend to creditors is extremely remote; so much so, that it would serve no purpose in this case to require the debtor to make any disclosures or provide any

information regarding his efforts and/or successes in getting his mortgage modified so that the contractual payment is reduced. Accordingly, the court will not require any notice or information beyond that requested by the trustee, and the debtor is directed to modify the second amended plan to provide, in the nonstandard provisions, that the debtor shall send the trustee notice of the sale of the subject real property, and shall send a closing statement within seven (7) days of closing. The final nonstandard provision in section 8.1 relieves the trustee from any duty to address the allowed secured claims of BONY that he would otherwise have.

**III.     No Indicia of a Lack of Good Faith**

Finally, with respect to the concerns expressed by BONY as to the debtor's lack of good faith under § 1325(a)(3) as evidenced by the debtor "intentionally choosing not to provide for Creditor in the Amended Plan," and by the standing trustee as to whether the debtor's plan satisfies the requirements of 11 U.S.C. § 521(a)(2), which he contends is made applicable in this instance by 11 U.S.C. § 1307(c)(10), the court agrees with the debtor that these arguments are not borne out in the context before the court. First, with respect to the standing trustee's arguments, the debtor correctly points out that § 1307(c)(10) pertains to dismissal or conversion at the behest of the U.S. trustee or, in this district, the bankruptcy administrator. Nor is the court persuaded by the trustee's arguments that this statute has application in the context of confirmation, or even in the context of chapter 13. *See In re Elkouby*, 561 B.R. 551, 555 n.7 (Bankr. S.D. Fla. 2016) (noting that "poor statutory drafting" suggests that a chapter 13 debtor must satisfy this requirement, rendering the statute "meaningless" in this context because chapter 13 debtors have no responsibilities under § 521(a)(2)(A)).

The court can agree that both BONY and the standing trustee make valid points as to the need for transparency and a candid sharing of information; however, this debtor has not fallen short in that capacity. As the standing trustee reminds the court, the bankruptcy process is "built on full disclosure, and on a full and fair disposition of a debtor's obligations." *In re White*, 618 B.R. 748, 755 (Bankr. E.D.N.C. 2020) (allowing trustee's objection to plan where chapter 13 debtor failed to initially disclose both a debt and the existence of the vehicle that partially secured it, failed to provide for that claim in plan, and was unduly recalcitrant in providing necessary information to the trustee). Here, the debtor has satisfied those responsibilities.

The court concludes, as it must, that if the debtor's actions in not treating BONY's allowed secured claims in his plan in fact *are* in accord with the Bankruptcy Code – and they are – then by definition, those actions are not in bad faith. As has been reviewed above, the debtor has fully disclosed the debts and the nature of them. The debtor's schedules listed the liens and the value of the property securing them, and the nonstandard provisions specify that the trustee is to make no payments to the secured creditor. BONY holds allowed secured claims, and based on the plain operation of chapter 13, by providing in his plan that the trustee is to make no payments with respect to those claims, the debtor has put BONY on notice that its contracts with the debtor control what happens next. The debtor may continue to make direct payments, and may or may not seek a modification of the obligation, to which BONY may or may not accede. If the debtor defaults, BONY retains all rights to pursue its remedies under those contracts.

As was addressed in the hearing, the very simple root of the matter is that the debtor quite reasonably prefers to try to work out a mortgage modification directly with BONY. In this context,

the Bankruptcy Code provides all protections necessary to the holder of such an allowed secured claim, and protects the trustee in his administration of the estate.

## CONCLUSION

Accordingly, for the foregoing reasons, the plan is conditionally confirmed, creditor BONY's objection to confirmation is **DENIED**, and the trustee's limited objection based on the plan's notice provisions is **ALLOWED**. The debtor's second amended plan is conditionally approved upon amendment of the plan's nonstandard provisions to provide that the debtor shall send the trustee notice of the sale of the subject real property and a closing statement within seven (7) days of closing.

**END OF DOCUMENT**